57 So.2d 819

**NEARHOS et al. v. CITY OF MOBILE.**

**I Div. 416.**

Supreme Court of Alabama.

March 27, 1952.

D. R. Coley, Jr., Mobile, for appellants.

Harry Seale, Mobile, for appellee.

LIVINGSTON, Chief Justice.

. The City of Mobile, Alabama, a municipal corporation, filed its bill of complaint in the Circuit Court, in Equity, of Mobile County, for the purpose of quieting title to certain described real estate located in the city. Parties claiming an interest in the lands were made parties respondents to the bill. Respondents' demurrers to the bill being overruled, they filed an answer and cross-bill. Complainant's demurrer to the cross-bill was sustained, and upon the lapse of time for amendment specified in the decree the cross-bill was dismissed. The order of dismissal was later set aside and respondents were permitted to file an amended cross-bill. Demurrer was sustained to the amended cross-bill and the same was dismissed. It is from that decree this appeal is prosecuted.

Appellants have assigned as error, the decree of the lower court overruling their

demurrers to the original bill, the decree sustaining·demurrers to the cross-bill, and the decree sustaining demurrers to the amended cross-bill and dismissing it. We can only consider the decree sustaining the demurrers to and dismissing the amended cross-bill.

Section 754, Title 7,·Code 1940, provides for appeals to this court from final judgments. Section 755, Title 7, Code 1940, provides for appeals from certain interlocutory decrees, if perfected within 30 days of their rendition. This record discloses no judgment which is appealable under Section 754, supra. Bennett v. Hall, 193 Ala. 273, 69 So. 136; Aston v. Dodson, 161 Ala. 518, 49 So. 856. Under Section 755, supra, only appeals from those interlocutory decrees perfected within the time limit prescribed may be considered. Bain v. Howell, 247 Ala. 514, 25 So.2d 167; Kyser v. American Surety ·Co., 213 Ala. 614, 105 So. 689. More than 30 days elapsed from the ruling of the court on appellants' demurrers to the original ·bill, and the ruling of the court on the demurrers to the cross-bill first filed below, and the taking of the appeal. Those rulings may be considered only on appeal from the final decree. Lampkin v. Strawbridge, 243 Ala. 558, 11 So.2d 130. Therefore, we now consider only the decree sustaining appellee's demurrers to, and dismissing, appellants' amended cross-bill.

We think the following brief statement of facts substantially states the issues raised and here presented for review.

In 1945 the City of Mobile instituted condemnation proceeding in the Probate Court of Mobile County to condemn various lots or parcels of land in the City of Mobile, including lands of appellants. The City sought to condemn the fee-simple title to the lands for use as a public park. The application to condemn was granted and Commissioners were appointed to assess the damages suffered by appellants. Upon the report of the Commissioners an order or decree was entered in the Probate Court condemning the fee-simple title of the lands here involved to the use of the City for the purposes set forth in the application

to condemn. Thereupon, appellants, under the provisions of Section 17, Title 19, Code 1940, appealed to the ·Circuit Court of Mobile County, Alabama. Pending the appeal the appellants executed and delivered to the City ·of Mobile a warranty deed conveying to said City the lands involved. No limitations, restrictions or conditions were contained in the deed. The appeal from the condemnation proceedings then pending in the Circuit Court was dismissed by appellants. About four years later the City of Mobile, not having used or made any effort to use, entered into a contract for the sale of the property here involved and other property to the Louisville & Nashville Railroad Company for a passenger station and depot site. The instant suit was begun by the City to determine its title under the condemnation proceeding ·and deed, and its right to sell the land to the railroad company. The amended cross-bill contains certain allegations, to be noted later, by which appellants seek to avoid their deed to the ·City on the grounds of mistake, misrepresentation and coercion.

Appellants earnestly insist that the City acquired an estate in land subject to forfeiture upon the abandonment of the purpose for which the land was condemned— in other words, a mere easement. On the other hand, the ·City claims an absolute title in fee simple with right to convey the lands to the railroad company.

The cross-bill alleges:

"For answer to paragraph Three, respondents admit that proceedings were instituted in the Probate Court of Mobile County, as alleged; that said proceedings were prosecuted to conclusion; that they appealed from the judgment of condemnation in the Probate Court and .from the report of the Commissioners appointed in said Court.

"They further show that the· amount fixed as the value of said property by the Commissioners appointed by the Court was greatly less than the fair and reasonable value of said property, but that moved by the consideration of the good expected to be derived by the public, and by the impression prevalent, that by insisting upon their rights and prosecuting the appeal to

conclusion they were hindering progress, and standing in the way of civic and public welfare, and believing that said property would be used for the purposes expressed in the condemnation proceedings, to-wit, for the purpose of constructing and maintaining a public park, which is to be immediately across Water Street from the block containing the City Hall, City Jail, etc., and being expressly assured by the Complainant that it would be so used and would not be sold to or turned over to the Louisville & Nashville Railroad Company, they, believing and relying upon said representations, consented to desist from further prosecution of their appeals. That they were advised that the most expeditious and best way to accomplish the purpose would be to execute deeds or instruments conveying said lands to the Complainant upon judgment for the sums fixed. That it was not their intention to convey any greater right in said lands Complainant was entitled to acquire in the condemnation proceedings.

"Answering Paragraph Three and a half, the Respondents say that the deed or conveyance referred to was given as a result of coercion; that it would not have been given had it not been for the condemnation proceedings. They deny that they received the full or fair value thereof, but say and show that the reasonable and fair value of said property at the time of said conveyance was greatly in excess of the amount paid to them, and the moving consideration for the proceedings was the representation that said property would be devoted to the public purposes set forth in the petition filed in the Probate Court, and that it would never be devoted to any private use or conveyed to any private corporation, including the Louisville & Nashville Railroad Company, and that in the event the Complainant should abandon the use of said property for the purpose for which it was sought to be condemned, the title thereto would revert to them."

Relative to the title acquired by a city in proceedings to condemn lands for park purposes the most apt authority is Downing v. State, 214 Ala. 199, 107 So. 80, written by Mr. Justice Sayre. Recognizing that the right of eminent domain, being in derogation of the common law, must be strictly construed, the court there held that the nature of the estate taken depends upon the statutory authority given the condemnor by the legislature, the intention of the condemnor, and the purpose for which the property is to be condemned. It was there held that the state acquired an indefeasible title in fee, to the exclusion of all rights and interest of the landowner.

The authority for municipalities to acquire land for park purposes by eminent domain is found in Title 37, §§ 470 and 507, Code 1940. Title 19, Chapter 1, Code 1940, merely provides for the procedure to be followed in such cases and is not a grant of the power of any particular case. Gerson v. Howard, 246 Ala. 567, 21 So.2d 693; Denson v. Alabama Polytechnic Institute, 220 Ala. 433, 126 So. 133.

Section 470, Title 37, Code 1940, provides that cities may establish, lay out and improve public grounds, parks and boulevards. Section 507, Title 37, Code 1940, provides that whenever in the judgment of the governing body of a city it may be necessary or expedient for the carrying out of any power granted by Title 37 to municipal corporations, the city "shall have full power and authority to acquire by purchase the necessary lands, or rights, easements, or interests therein, thereunder, or thereover, or for the purposes for which private property may be acquired by condemnation, may proceed to condemn the same in the manner provided by this chapter, or by the general laws of this state, governing the taking of lands or the acquiring of interests therein for the uses for which private property may be taken * * *."

Under Section 507, Title 37, Code 1940, cities may acquire property for parks either by purchase or condemnation. In our opinion the necessary or fair implication of such statutory language leads to the conclusion that the legislature granted to cities the right to acquire an indefeasible title in fee to property properly condemned for specified purposes.

As to the intention of the condemnor in this case, a reading of the pleadings and orders in the condemnation proceedings

which are attached to the bill clearly shows that the city desired the entire fee. Its petition prayed for such, and the decree of the Probate Court recites that the fee was condemned.

■ However, a more serious problem is presented as to the nature of title required by a condemnor of property for park purposes. The rule of the Downing case does not mean that all condemnors acquire in every case an indefeasible title in fee. The nature of the purpose for which the property is condemned must be considered. The right of eminent domain being based upon necessity cannot be any broader than the necessity in the particular case under consideration.

Authorities from other jurisdictions are not of one mind on this point. One line of cases has held that where there is express authority to condemn the fee for park purposes granted by the legislature, the fee may be condemned. Brooklyn Park Com'rs v. Armstrong, 45 N.Y. 234; Wright v. Walcott, 238 Mass. 432, 131 N.E. 291, 18 A.L.R. 1242; Skelly Oil Co. v. Kelly, 134 Kan. 176, 5 P.2d 823. Another line is taken by such cases as McCombs v. Stewart, 40 Ohio St. 647; Reed v. Board of Park Com'rs of City of Winona, 100 Minn. 167, 110 N.W. 1119; Newton v. Manufacturers' Railroad Co., 6 Cir., 115 F. 781. In the McCombs case the court said: "But whether the property taken is paid for in money or in accruing benefits and advantages, it should clearly appear by the terms of the act that it was the legislative intent to take a fee before such an interest can be given to it. In the absence of express words, a fee will not be deemed to be taken where the purpose of the act will be satisfied, as in the case at bar, with the taking of an easement."

In the Newton case the court held that there was no implied necessity for acquisition of the fee when the statute merely provided that property for park purposes could be acquired by condemnation.

A case very much here in point is Driscoll v. New Haven, 75 Conn. 92, 52 A. 618, 621. There the City had been granted the right to take by condemnation "any property or property rights" which might be needed for park purposes. The court said: "The uses for which a public park are acquired are continuous and peculiarly exclusive. They are inconsistent, and must ever be inconsistent, with the existence and exercise of any of the incidents of private ownership therein. They are inconsistent with the enjoyment of private rights, whether upon the surface of the ground thereof, or to the highest heavens above, or the lowest earth beneath. 'The idea of a public park implies more than a use by the public which is susceptible of coexistence with a private right capable of concurrent exercise.' The existence of a park implies the probability of improvements and transformations oftentimes extensive and costly, and which, in the nature of things, must be undisturbed. It implies something more than the right of public passage, however frequent and exclusive. The right of access in the capacity of owner is an essential incident of beneficial ownership. Without it there can be no enjoyment. This right of access incident to ownership cannot be preserved to the original landowner where it is swallowed up in the oftentimes large tracts of public parks, or whenever land contiguous to the particular piece is not retained by him. (Citations). The legislature, in the charter of the defendant city, has authorized it 'to take' by the right of eminent domain 'any property or property rights' which might be needed for park purposes. This taking thus authorized in this connection must, by reason of the considerations stated, be construed to mean such a taking as will be consonant with the purpose in view, and therefore a taking which divests the other parties to the proceedings of all their title or interest in the property taken, and vests the same in the city."

■ We are of the opinion that because the permanence of parks, the necessity of expenditure of public funds in improvements thereon, and the necessary exclusion of all rights of the former owners, the taking of a fee simple title where such is prayed for by a proper condemning authority is clearly contemplated by our statutes.

 We are clear to the conclusion that the Probate Court of Mobile County had and has the statutory authority to condemn the fee-simple title to lands located in the city of Mobile for park purposes on proper proceeding to that end. Under the pleadings in the instant case it is not necessary to decide whether or not the City of Mobile acquired the title to the property involved under the condemnation proceeding—in other words, whether or not the City pursued the condemnation proceeding to final conclusion so as to vest title under the statute. We are asked to construe the deed in connection with the condemnation proceedings, and we do so.

The cross-bill alleges that the deed was the result of coercion. Coercion cannot exist in doing what one has a legal right to do. The City had the right to condemn and, as a consequence, no coercion appears in that regard.

There is no allegation of fraud in the cross-bill now under consideration. Clarkson v. Pruett, 201 Ala. 632, 79 So. 194; 53 C.J., §§ 65–67, pp. 949–952. Indeed, appellants' counsel states in brief "I do not argue that the Commissioners of the City of Mobile intended to convey the property to the Louisville & Nashville Railroad Company at the time the condemnation proceedings were brought. I do not argue that either the City of Mobile or its attorney, in the negotiations with the appellants, acted in bad faith or stated to them as a fact that which they did not believe, but I do contend that the City of Mobile could not acquire the fee simple title to property in condemnation proceedings, taking the property for use as a public park and then without pretending to develop the property as a park, change its mind and convey the fee simple title to the Louisville & Nashville Railroad Company."

As we construe the cross-bill, appellants, with reference to the deed, attempt to establish a condition subsequent and to enforce it because of the alleged abandonment of the use of the property for the purpose for which the title was acquired.

The cross-bill shows that any agreement to that effect, made in the negotiation for the execution and delivery of the deed, was by parol.

 In the absence of fraud, a parol condition subsequent cannot be ingrafted on a deed conveying a fee-simple title. Title 20, § 3, Code 1940; 53 C.J., § 39, p. 927; 19 Am.Jur. § 78, p. 543.

The principle involved is analogous to that stated in such cases as Smith v. Smith, 153 Ala. 504, 45 So. 168; Johnson v. Maness, 232 Ala. 411, 168 So. 452, and on second appeal 241 Ala. 157, 1 So.2d 655; Dean v. Griffith, ante, p. 67, 57 So.2d 545.

The trial court's decree sustaining the demurrer to appellants' cross-bill is without error and the cause is affirmed.

Affirmed.

FOSTER, LAWSON and SIMPSON, JJ., concur.