293 So.2d 294

**JEFFERSON COUNTY, Alabama**

v.

**Recie A. McCLINTON and Ruby McClinton.**

**SC 440.**

Supreme Court of Alabama.

March 7, 1974.

Rehearing Denied April 25, 1974.

Charles A. J. Beavers, Birmingham, for appellees.

John S. Foster, Birmingham, for appellant.

FAULKNER, Justice.

Jefferson County appeals from a declaratory decree determining the right to a tract of land. The County and the McClintons claimed ownership.

On July 15, 1952, Recie A. McClinton and Ruby McClinton conveyed to Jefferson

County, Alabama, by warranty deed, a parcel of land described as follows:

Beginning at the N.E. corner of the S.W. ¼ of the S.E. ¼ of Sec. 13, Tp. 19 S., R. 3 W. thence West 420 feet, thence South 51° 00' West, 610 feet, thence 90° 00' Right 61 feet to point of beginning, continue thence along the same straight line, bearing north 39° west, 480 feet, to the north boundary line of said S.W. ¼ of S.E. ¼, thence west 98 feet to the N.W. corner of said S.W. ¼ of S.E. ¼, thence south 510 feet, more or less, to corner of Fred Greer one acre tract, thence north 51° 00' east along the north boundary line of said one acre lot, 320 feet, thence south, 135 feet, more or less to the north boundary line of highway right-of-way, thence north 51° east along said right-of-way line to point of beginning, containing 2.8 acres, more or less, situated in Jefferson County, Alabama.

The conveyance culminated a negotiated sale of the land to be used as a State highway right of way. The consideration paid by the County to McClinton was $2,500.00. The State of Alabama reimbursed the County and used the major portion of the land for construction of a segment of U.S. Highway 31 South.

The evidence of McClinton's tended to show that during the negotiation of the sale, the McClintons were promised by a representative of the County that any unused portion of the land for right of way purposes would revert to them. Subsequent to the execution of the deed, McClinton received a notice regarding a sale of part of the property for taxes. McClinton testified that he went to a State Highway Department office in Birmingham after receiving the notice and was told by someone there that the land was his—he should redeem it. He redeemed the part of the land not used by the State for its right of way. He received a certificate of redemption dated May 24, 1952, and since that date he paid the taxes. McClinton testified he replaced an old fence on the property with another and that it had remained in its general location since 1962. He leased a portion of the land which he redeemed to Green Tree Apartments for advertising signs.

By a letter dated July 25, 1972, from the Division Engineer, State Highway Department, McClinton was told the land belonged to the State. He was requested to remove the fence and if he did not, the State would remove it for him.

McClinton testified on cross-examination that he had erected the fence to keep trespassers from removing dirt from the land; that the State had given him permission to remove dirt. He was instructed by the State to "leave it it good shape, don't want to leave any ragged ends around and . . . ." He testified people had been getting dirt and rocks off the land five or six years before he put up the fence.

The only use of the land by McClinton was the removal of the dirt. Mrs. McClinton made no use of the land in dispute. Mrs. McClinton's mother testified she heard the County representative and McClinton discussing the sale; that she heard the representative tell McClinton if there was any land left after construction of the highway, it would belong to McClinton.

The County's evidence was to the effect that the land was purchased and paid for by the County as a right of way for U.S. Highway 31; that the County acquired the right of way for the State and was reimbursed with State funds; that any unused portion of the land would be held in escrow for future needs. In answer to McClinton's evidence that he was told by a representative of the County that the unused part of land would revert to him, Mr. Norman C. McKinney, an employee of the State Highway Department, Right of Way Division, testified as follows:

"Q. Are you in a position to know whether or not the record in this case,—are you in a position to state

whether or not there was any oral comitment made to Mr. or Mrs. McClinton in executing that deed?

\* \* \* \* \* \*

"A. Of my own knowledge, I know of the details of this negotiation. As I started to explain, the initial offer was made and rejected on the plea that they did not wish to sell part of the property but would sell the whole amount for X number of dollars. It was then approved and negotiation formalized.

"Q. Did you continue those negotiations yourself or hear somebody tell you about it?

"A. It was brought back to me and I approved application of Highway Department and gave commitment to the Jefferson County Road Department to go ahead with it on that basis.

"COURT: Did you continue negotiation directly with McClinton or somebody else?

"WITNESS: The County Agents [sic] was doing all the ground negotiating, but he got his authority from us or got our approval.

The trial court decreed that except for the portion of land used for highway right of way, the land belonged to McClinton. We disagree.

While the facts of this case have the flavor of a deed given on the threat of a condemnation, there is no evidence in the record substantiating any threat of condemnation. The evidence is wholly to the effect that the County and McClinton negotiated a sale and purchase of a parcel of real estate. The deed conveyed a fee simple title in the whole of the property. We cannot violate the well known rule that parol evidence is not admissible to contradict or vary the terms of a valid legal instrument. Floyd v. Andress, 246 Ala. 301, 20

So.2d 331 (1944); Lost Creek Coal & Mineral Land Co. v. Hendon, 215 Ala. 212, 110 So. 308 (1926). It is the opinion of this court that McClinton was not entitled to have a reversion of that part of the land not used for the right of way in the absence of a showing of fraud.

McClinton cites Nearhos v. City of Mobile, 257 Ala. 161, 57 So.2d 819 (1952) as an authority for the proposition that the right of eminent domain, being based on necessity cannot be any broader than the necessity in the particular case under consideration. In *Nearhos* the City of Mobile instituted condemnation proceedings in the Probate Court to condemn lots for parcels of land for use as a public park. Fee simple title to the land was sought. Commissioners assessed the damages and an order was entered by the Probate Court condemning the fee simple title of the land. The property owners appealed to the Circuit Court as provided by Title 19, § 17, Code of Alabama 1940, Recompiled 1958. Pending the appeal the property owners conveyed the land to the City by warranty deed. Some four years later the City, not having used the property for park purposes, entered into a contract to sell the land to a railroad company for use as a depot. The City brought suit to determine its interest in the land and its right to sell it. The property owners sought to void their deed on the grounds of mistake, misrepresentation, and coercion. The property owners contended that the City only acquired a mere easement. The City claimed a fee simple title. The court stated that it was not necessary under the pleadings of the case to decide whether the City acquired title under the condemnation proceedings. The court was asked to construe the deed. (The court recognized that the Probate Court had the statutory authority to condemn the fee simple title.) The court said coercion cannot exist in doing what one has a legal right to do. Since the City had the right to condemn, there was no coercion. There was no fraud alleged and the negotiation for the deed to the property was by parol. The property

owners attempted to establish a condition subsequent and enforce it because the City abandoned the use of the property for which title was acquired. The court said, in the absence of fraud a parol condition subsequent cannot be ingrafted on a deed conveying fee simple title.

■ While the trial court did not in its decree refer to title in McClinton by redemption of the land sold for taxes and holding the same adversely, the issue of adverse possession was argued. There is abundant authority in this State for the proposition of law that title cannot be acquired by adverse possession of land owned by the State or a county. Title 7, §§ 16 and 17, Code of Alabama 1940, Recompiled 1958. State v. Tarleton, 279 Ala. 555, 188 So.2d 516 (1966); Nixon v. City of Anniston, 219 Ala. 219, 121 So. 514 (1929).

■ McClinton argues that the county in its answers to the bill of complaint stated that it owned the land in dispute, whereas the county's evidence tended to show the State owned the land; that this was a fatal variance between its pleading and proof. This is a novel turn about, and McClinton cites no cases on behalf of his contention. The rules as to variance between allegations and proof refer to allegations in the bill of complaint and proof by complainant. It is the complainant who, by filing his bill, seeks relief. The reason for the rule is to prevent surprise and deprive parties of their rights without due process of law. W. T. Smith Lumber Co. v. Foshee, 277 Ala. 71, 167 So.2d 154 (1964); Williams v. State, 215 Ala. 546, 112 So. 114 (1927). The answer is defensive pleading and the variance rule does not apply to it.

From the record in this case we conclude that the McClintons have no right, title, or interest in the property described in their bill of complaint by virtue of their conveyance of a fee simple title by warranty deed to the grantee.

Reversed and remanded.

MERRILL, HARWOOD and MADDOX, JJ., concur.

HEFLIN, C. J., concurs specially.

HEFLIN, Chief Justice (concurring specially):

I concur in the result reached by the majority in this case, but for a different reason.

There was substantial evidence adduced by the respondent-appellant County that the property in question was acquired by the County on behalf of the State of Alabama, and that the County was merely acting as an agent of the State for such acquisition. The State undisputedly bore the cost of the acquisition. Thus it is clear that the State had an interest in the property, either full ownership under the law of agency or at least equitable title since the State supplied the purchase money. This court has often stated that in a court of equity all persons having a material interest, legal or equitable, in the subject matter of a suit must be made parties, either as plaintiffs or defendants. E. g., Hawkins v. Snellings, 255 Ala. 659, 53 So. 2d 552 (1951). The holders of both legal or equitable interests are necessary parties. Walker County v. White, 248 Ala. 53, 26 So.2d 253 (1946). Thus the State was unquestionably a necessary party to this action.

This court has recently reiterated its position that the absence of necessary or indispensable parties is jurisdictional and that such absence necessitated the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment, and furthermore, that it is the duty of the court ex mero motu to notice the absence of a necessary or indispensable party even on appeal where the issue is not raised by either party. Morris v. Owens, 292 Ala. 159, 290 So.2d 646 (1974) and cases cited therein.

Thus I would reverse this case with directions to allow the cause to stand over for amendment.